## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIFFANY WEAVER, | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION NO. |
| | : | |
| v. | : | |
| | : | |
| MASTERY CHARTER SCHOOLS; | : | PLAINTIFF DEMANDS A TRIAL BY |
| MASTERY CHARTER SCHOOLS d/b/a | : | JURY |
| FRANCIS D. PASTORIOUS - | : | |
| MASTERY CHARTER SCHOOL; ERIC | : | |
| LANGSTON; TEDDIE GWYNN; and | : | |
| THERESA VELYKIS | : | |
| Defendants. | | |

Plaintiff, TIFFANY WEAVER, by and through undersigned counsel hereby files this Civil Action Complaint against Defendants MASTERY CHARTER SCHOOLS, MASTERY CHARTER SCHOOLS d/b/a FRANCIS D. PASTORIOUS - MASTERY CHARTER SCHOOL, ERIC LANGSTON, TEDDIE GWYNN and THERESA VELYKIS (collectively "Defendants") and avers the following:

### PARTIES

1. PLAINTIFF TIFFANY WEAVER (hereinafter also referred to as "PLAINTIFF") is a female individual who is a resident of the Commonwealth of Delaware.

2. At all times material, Mastery Charter Schools was and still is a domestic non-profit under the Commonwealth of Pennsylvania, with its headquarters at 5700 Wayne Avenue, Philadelphia, PA 19144.

3. At all times material, Mastery Charter School d/b/a Francis D. Pastorious – Mastery Charter School was and still is a domestic non-profit under the Commonwealth of Pennsylvania, with its headquarters at 5700 Wayne Avenue, Philadelphia, PA 19144.

1

4. At all times material, MASTERY CHARTER SCHOOL and MASTERY CHARTER SCHOOL d/b/a FRANCIS D. PASTORIOUS – MASTERY CHARTER SCHOOL (hereinafter referred to as "Defendant MASTERY") were the individual and joint employers of PLAINTIFF.

5. At all times material, Defendant MASTERY employed PLAINTIFF at 5650 Sprague St., Philadelphia PA 19138.

6. At all times material, Defendant ERIC LANGSTON (hereinafter referred to as "Defendant LANGSTON") was and is employed as Principal for Defendant MASTERY.

7. Upon information and belief, at all times material, Defendant LANGSTON identified as male.

8. At all times material, Defendant LANGSTON held supervisory authority over PLAINTIFF.

9. At all times material, Defendant TEDDIE GWYNN (hereinafter referred to as "Defendant GWYNN") was and is employed as Senior Director of Human Resources for Defendant MASTERY.

10. Upon information and belief, at all times material, Defendant GWYNN identified as female.

11. At all times material, Defendant GWYNN held supervisory authority over PLAINTIFF.

12. At all times material, Defendant THERESA VELYKIS (hereinafter referred to as "Defendant VELYKIS") was and is employed as Human Resources Director for Defendant MASTERY.

13. Upon information and belief, at all times material, Defendant VELYKIS identified as female.

14. At all times material, Defendant VELYKIS held supervisory authority over PLAINTIFF.

15. At all times material, Defendants were the joint and/or sole employers of PLAINTIFF.

## NATURE OF THE CASE

16. PLAINTIFF complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2003-17 (amended in 1972, 1978, by the Civil Rights Act of 1991, Pub. L.

No. 102-166) ("Title VII"); the Pennsylvania Human Relations Act, as amended, 43 P.S. 951, *et. seq*. ("PHRA"); as well as the Philadelphia Fair Practices Ordinance ("PFPO"); and seeks damages to redress the injuries PLAINTIFF has suffered as a result of being subjected to discrimination, retaliation, and wrongful termination by the aforementioned Defendants.

17. Furthermore, this action is to redress the Defendants' unlawful employment practices against PLAINTIFF, including Defendants' unlawful discrimination against PLAINTIFF because of her sex and for Defendants wrongful actions against PLAINTIFF leading up to, and including, her unlawful termination.

18. PLAINTIFF seeks declaratory and injunctive relief, actual damages, compensatory damages, punitive damages, reinstatement, attorneys' fees, litigation costs, and pre- and post-judgment interest as remedies for Defendants' violations of her rights.

## JURISDICTION AND VENUE

19. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331, which gives district courts jurisdiction over all civil actions arising under the Constitution, laws, and treaties of the United States.

20. This Court has jurisdiction in that this action involves a Federal Question under Title VII of the Civil Rights Act of 1964.

21. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

22. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1343 which gives district courts original jurisdiction over (a) any civil action authorized by law to be brought by any person to redress the deprivation, under color of any State Law, statue, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all

persons within the jurisdiction of the United States, and (b) any civil action to recover damages or to secure equitable relief under any Act of Congress providing for the protection of the civil rights.

23. Venue is proper in the Eastern District of Pennsylvania based upon Defendants' residency and that a substantial part of the events or omissions giving rise to the claims occurred within Philadelphia County in the Commonwealth of Pennsylvania in the Eastern District of Pennsylvania. 28 U.S.C. § 1391(b).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

24. Around March 28, 2022, PLAINTIFF filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") against Defendants as set forth herein.

25. Plaintiff's Charge of Discrimination was dual filed with the Pennsylvania Human Resources Commission ("PHRC") and the Philadelphia Commission on Human Relations ("PCHR").

26. Around September 13, 2022, the EEOC sent a Dismissal and Notice of Rights to PLAINTIFF by electronic mail.

27. This action is hereby commenced within ninety (90) days of receipt of the Dismissal and Notice of Rights.

28. PLAINTIFF has complied with all administrative prerequisites to bring this lawsuit.

29. PLAINTIFF's PHRA and PFPO claims are still pending because less than one year has elapsed since Plaintiff filed with the PHRC and PCHR.

30. PLAINTIFF will seek to amend her complaint to assert the newly ripened causes of action under the PHRA and PFPO against the parties referenced above. See Fed. R. Civ. P. 15(a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiffs may "serve a supplemental

pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented.").

## **<u>MATERIAL FACTS</u>**

31. Around August 2012, Defendant MASTERY hired PLAINTIFF as a teacher.

32. Around 2017, PLAINTIFF was promoted to Assistant Principal.

33. Throughout her employment, PLAINTIFF performed her job responsibilities in a satisfactory manner.

34. As Assistant Principal, PLAINTIFF directly reported to Defendant LANGSTON, who functioned as PLAINTIFF's supervisor and had the authority to hire, fire, and/or promote her.

35. Around August 2, 2021, PLAINTIFF informed Defendant LANGSTON that she was pregnant.

36. In addition to informing Defendant LANGTON that she was pregnant, PLAINTIFF told Defendant LANGSTON that her doctor recommended a "smooth year" for her and to "eliminate potential stressors" given that she was over 35 years old and a heightened risk for pregnancy complications.

37. At no time did PLAINTIFF ask Defendant LANGSTON for work-place accommodations.

38. Immediately upon informing Defendant LANGSTON she was pregnant, Defendant LANGSTON subjected PLAINTIFF to sex discrimination.

39. For example, and by no means an exhaustive list, Defendant LANGSTON asked PLAINTIFF if she needed any accommodations to perform her job duties.

40. In response, PLAINTIFF told Defendant LANGSTON that she did not need accommodations, as she was more than capable of completing her assigned job duties without an accommodation.

41. Nonetheless, Defendant LANGSTON persisted that PLAINTIFF request accommodations.

42. Upon information and belief, Defendant LANGSTON wanted PLAINTIFF to ask for accommodations because he believed that if PLAINTIFF needed accommodations, PLAINTIFF would be unable to perform her job duties and therefore could be terminated.

43. Around August 18, 2021, Defendant LANGSTON emailed PLAINTIFF stating that he, PLAINTIFF, and MASTERY's Regional School Office should meet to discuss PLAINTIFF's accommodations.

44. In light of Defendant LANGSTON's email, around August 20, 2021, PLAINTIFF reiterated to Defendant LANGSTON that she did not need accommodations.

45. Around August 24, 2021, PLAINTIFF obliged and reluctantly attended the meeting, where she again repeated that she did not need any accommodations and that she was fully capable of performing her job duties without an accommodation.

46. After PLAINTIFF's repeated assurances that she did not need accommodations, Defendant LANGSTON began increasing PLAINTIFF's workload and assigning her tasks that were outside of her job duties.

47. Upon information and belief, Defendant LANGSTON began increasing PLAINTIFF's workload and assigning her tasks that were outside of her job duties in an effort to overwhelm PLAINTIFF so PLAINTIFF would have to ask for accommodations.

48. Upon information and belief, Defendant LANGSTON believed that if PLAINTIFF asked for accommodations, PLAINTIFF would be admitting that she could not perform her job and therefore could be terminated.

49. In the meantime, Defendant MASTERY's Attendance Coordinator had resigned.

50. As a result, PLAINTIFF instructed Defendant LANGSTON to contact Human Resources and fill the position.

51. Instead, despite knowing that PLAINTIFF had requested him to be mindful of PLAINTIFF's stress levels due to her pregnancy, Defendant LANGSTON began assigning the Attendance Coordinator duties to PLAINTIFF.

52. This caused PLAINTIFF to feel distressed.

53. Around August 28, 2021, PLAINTIFF emailed Kimberly Roosa, Human Resources Representative, and asked if she had found any candidates to fill the Attendance Coordinator role, as PLAINTIFF could not continue performing the tasks of an Attendance Coordinator in addition to her regularly assigned job duties.

54. In response, Ms. Roosa informed PLAINTIFF that she was unaware Defendant MASTERY was in need of an Attendance Coordinator.

55. Upon information and belief, Defendant LANGSTON never instructed Ms. Roosa to hire an Attendance Coordinator.

56. Throughout September 2021, Defendant LANGSTON insisted PLAINTIFF request accommodations, to which PLAINTIFF denied.

57. For example, and by no means an exhaustive list, at PLAINTIFF's one-on-one meeting with Defendant LANGSTON again questioned PLAINTIFF and asked if she needed accommodations.

58. PLAINTIFF declined any accommodations but emphasized that she needed support on the third floor, as she was still completing the additional tasks of an Attendance Coordinator.

59. Defendant LANGSTON did not address PLAINTIFF's concerns regarding hiring an Attendance Coordinator.

60.  Around October 2021, Defendant LANGSTON commented on PLAINTIFF's appearance and told PLAINTIFF, "**you're getting so big**" and "**you sure can eat a lot**."

61. These comments made PLAINTIFF extremely uncomfortable and embarrassed.

62. Around October 28, 2021, as PLAINTIFF's pregnancy journey progressed, Defendant LANGSTON told PLAINTIFF that she was underperforming.

63. Prior to informing Defendant LANGSTON that she was pregnant, PLAINTIFF never had any work performance issues.

64. Around November 5, 2021, Defendant LANGSTON reprimanded PLAINTIFF for an email she sent to MASTERY teachers.

65. Specifically, PLAINTIFF sent an email to Defendant MASTERY teachers regarding the transition of seventh and eighth grade students.

66. Although emailing teachers was company policy, Defendant LANGSTON scolded PLAINTIFF and told her she should have met with the teachers instead of emailing them.

67. Prior to informing Defendant LANGSTON that she was pregnant, PLAINTIFF had never been scolded for performing the quintessential duties of her job such as sending an email.

68. Around November 22, 2021, Defendant LANGSTON emailed PLAINTIFF regarding Defendant MASTERY's newly implemented "culture reset plan" for student behavior.

69. Despite school culture being one of PLAINTIFF's essential job duties, PLAINTIFF was not included in the execution or planning of said plan.

70. Moreover, Defendant LANGSTON never consulted PLAINTIFF before implementing said plan.

71. Later that same day, Defendant LANGSTON reprimanded PLAINTIFF again for the "Attendance On-Boarding Plan" she created.

8

72. Defendant LANGSTON did not offer PLAINTIFF any support or clarity regarding said plan despite PLAINTIFF asking Defendant LANGSTON for assistance to ensure this plan met his expectations.

73. Upon information and belief, Defendant LANGSTON deliberately did not assist PLAINTIFF with said plan so it would not meet his expectations, which would result in disciplining PLAINTIFF.

74. Around November 29, 2021, PLAINTIFF sent Defendant MASTERY's Human Resources Department an email entitled, "**Formal Complaint Against Eric Langston for Discrimination**," which outlined all of Defendant LANGSTON's discriminatory behavior towards PLAINTIFF.

75. Specifically, in the email, PLAINTIFF noted, "I have remained in great standing at Mastery Charter, while consistently maintaining the top data in the network in every position that I have held while employed at Mastery. **It was not until this school year, when I revealed to Mr. Langston that I am pregnant, that this has all changed**."

76. In the email, PLAINTIFF noted that around July 27, 2021, during PLAINTIFF's end of the year performance review, Defendant LANGSTON did not provide any examples of PLAINTIFF underperforming.

77. In the email, PLAINTIFF noted that "**August 2021 – Langston asked me multiple times if I needed accommodations due to my pregnancy. My response each time was no, I am capable of doing my job while pregnant**."

78. In the email, PLAINTIFF noted that on August 18, 2021, she sent an email to "**gain clarity on why accommodations and supports are being pushed onto me and if it has something to do with my pregnancy**."

79. In the email, PLAINTIFF noted that on September 14, 2021, Defendant LANGSTON "**continues to question me about accommodations during our 1:1 check in. Again, I decline accommodations**."

80. In the email, PLAINTIFF noted that in October 2021 Defendant LANGSTON "**made an inappropriate comment about my pregnancy. He stated that I am getting big and that I am starting to eat a lot**."

81. PLAINTIFF concluded the email stating, "**This is [sic] blatant case of discrimination and retaliation**."

82. On December 2, 2021, PLAINTIFF met with Defendant GWYNN to address Defendant LANGSTON's discriminatory behavior.

83. Upon information and belief Defendant MASTERY conducted an investigation regarding Defendant LANGSTON's discriminatory conduct.

84. On December 22, 2021, Defendants GWYNN and VELYKIS held a meeting with PLAINTIFF.

85. During this meeting, Defendants GWYNN and VELYKIS informed PLAINTIFF that the outcome of her claim of discrimination was "unconfirmed."

86. Defendants GWYNN and VELYKIS then terminated PLAINTIFF citing that she "was not a good fit" for Defendant MASTERY.

87. PLAINTIFF was shocked by her termination.

88. Defendants unlawfully terminated PLAINTIFF on December 22, 2021.

89. Defendants' allegations were false and pretextual.

90. In reality, Defendants terminated PLAINTIFF's employment due to her sex/pregnancy and reports of sex/pregnancy discrimination.

91. As a result of DEFENDANTS' actions, PLAINTIFF felt extremely humiliated, degraded, victimized, embarrassed and emotionally distressed.

92. As a result of the acts and conduct complained of herein, PLAINTIFF has suffered and will continue to suffer the loss of income, the loss of salary, bonuses, benefits and other compensation which such employment entails, and PLAINTIFF also suffered future pecuniary losses, emotional pain, humiliation, suffering, inconvenience, loss of enjoyment of life, and other non-pecuniary losses. PLAINTIFF has further experienced severe emotional and physical distress.

93. That as a result of Defendants' conduct, the PLAINTIFF was caused to sustain serious and permanent personal injuries, including but not limited to permanent psychological injuries.

94. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, PLAINTIFF demands Punitive Damages as against all the Defendants, jointly and severally.

95. PLAINTIFF claims that Defendants unlawfully discriminated against PLAINTIFF because of her sex/pregnancy and because she complained of and opposed the unlawful conduct of Defendants related to the above protected classes.

96. The above are just some of the examples of the unlawful discrimination to which the Defendants subjected PLAINTIFF.

97. Defendants have exhibited a pattern and practice of not only discrimination but also retaliation.

98. PLAINTIFF claims alternative that PLAINTIFF is an Independent Contractor, and PLAINTIFF makes all applicable claims for the above conduct and facts under the applicable law pertaining to Independent Contractors. Furthermore, in such case, PLAINTIFF claims that

Defendant owed and breached its duty to PLAINTIFF to prevent the harassment, discrimination, and retaliation and is liable therefore for negligence.

99. PLAINTIFF claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

**COUNT I**
**DISCRIMINATION**
**UNDER TITLE VII**
**(against Defendant Mastery only)**

100.   Plaintiff, Tiffany Weaver, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

101.   Title VII provides, in relevant part, that "it shall be an unlawful employment practice for an employer . . . to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of [her] race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

102.   Title VII further provides that "an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m).

103.   In 1978, Congress enacted the Pregnancy Discrimination Act, 92 Stat. 2076, which added new language to Title VII's definitions subsection to specify that Title VII's "ter[m] 'because of sex' . . . include[s] . . . because of or on the basis of pregnancy, childbirth, or related medical conditions.; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes . . . as other persons not so affected but similar in their ability or inability to work." 42 U.S.C. § 2000e(k).

12

104. Defendants engaged in unlawful employment practices prohibited by Title VII by intentionally discriminating against Plaintiff with respect to her compensation, terms, conditions of employment because Plaintiff was pregnant. Defendants subjected Plaintiff to adverse tangible employment actions—defined as significant changes in Plaintiff's employment status, discipline, denial of training, failure to promote, reassignment with significantly different job responsibilities, and decisions causing changes in significant changes in her employment benefits.

105. Plaintiff's protected characteristics played a determinative factor in Defendants' decisions.

106. Defendants cannot show any legitimate nondiscriminatory reasons for their employment practices and any reasons proffered by Defendants for their actions against Plaintiff are pretextual and can readily be disbelieved.

107. Alternatively, Plaintiff's protected status played a motivating part in Defendants' decisions even if other factors may also have motivated its actions against Plaintiff.

108. Defendants acted with the intent to discriminate.

109. Defendants acted upon a continuing course of conduct.

110. Defendants acted with the intent to discriminate against Plaintiff because of her sex/pregnancy.

111. Defendants wrongfully terminated Plaintiff, in violation of Title VII, solely or in part, because of her sex/pregnancy.

112. As a result of the Defendant's violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT II
## HOSTILE WORK ENVIRONMENT
## UNDER TITLE VII
### (against Defendant Mastery only)

113.   Plaintiff, Tiffany Weaver, hereby incorporates all allegations contained in the above-mentioned paragraphs as fully as if they were set forth at length.

114.   Title VII also prohibits hostile work environment harassment, defined as unwanted comments or conduct regarding the plaintiff's protected characteristics that have the purpose or effect of unreasonably interfering with the terms and conditions of the plaintiff's employment. Harris v. Forklift Systems, 510 U.S. 17, 21 (1993).

115.   An employer is strictly liable for supervisor harassment that "culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998).

116.   Respondent superior liability for the acts of non-supervisory employees exists where "the defendant knew or should have known of the harassment and failed to take prompt remedial action." Andrews v. city of Philadelphia, 895 F.2d 1469, 1486 (3d Cir. 1990).

117.   Employer liability for co-worker harassment also exists where "the employer failed to provide a reasonable avenue for complaint." Huston v. Procter & Gamble Paper Prods. Corp., 568 F.3d 100, 105 (3d Cir. 2009).

118.   The Third Circuit has held that the retaliation provision of Title VII "can be offended by harassment that is severe or pervasive enough to create a hostile work environment." Jensen v. Potter, 435 F.3d 444, 446 (3d Cir. 2006).

119.   Here, Defendant's conduct occurred because of Plaintiff's legally protected characteristics and was severe or pervasive enough to make a reasonable person of the same legally protected

class (sex/gender-female) believe that the conditions of employment were altered, and that the working environment was intimidating, hostile, or abusive.

120.   Plaintiff's supervisors had the authority to control Plaintiff's work environment, and they abused that authority by permitting Defendant Langston to engage in conduct despite knowing of it, thus creating a hostile work environment.,

121.   The conduct was both severe and pervasive.

122.   The conduct was emotionally damaging and humiliating.

123.   The conduct unreasonably interfered with Plaintiff's work performance.

124.   The conduct was so extreme that it resulted in material changes to the terms and conditions of Plaintiff's employment.

125.   Defendant Mastery, and its' supervisory employees, provided a futile avenue for complaint.

126.   Defendant Mastery, and its' supervisory employees, acted upon a continuing course of conduct.

127.   As a result of Defendant Mastery's and its' supervisory employees' violations of Title VII, Plaintiff has suffered damages including but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

## COUNT III
## RETALIATION
## UNDER TITLE VII
### (against Defendant Mastery only)

128.   Plaintiff, Tiffany Weaver, hereby incorporates all allegations contained in the above paragraphs as fully as if they were set forth at length.

129.    Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a) provides

that it shall be an unlawful employment practice for an employer: "(1) to…discriminate against

any of his employees…because [s]he has opposed any practice made an unlawful employment

practice by this subchapter, or because [s]he has made a charge, testified, assisted, or

participated in any matter in an investigation, proceeding, or hearing under this subchapter."

130.    Informal complaints and protests can constitute protected activity under the "opposition"

clause of 42 U.S.C. § 2000e-3(a). Moore v. City of Philadelphia, 461 F.3d 331, 343 (3d Cir.

2006) ("Opposition to discrimination can take the form of informal protests of discriminatory

employment practices, including making complaints to management.").

131.    Title VII's anti-retaliation provision also protects employees who speak out about

discrimination by answering questions during an employer's internal investigation. Crawford

v. Metropolitan Gov't of Nashville and Davidson Cty., Tennessee, 555 U.S. 271, 277 (2009)

(declaring that there is "no reason to doubt that a person can 'oppose' by responding to

someone else's question just as surely as by provoking the discussion, and nothing in the statute

requires a freakish rule protecting an employee who reports discrimination on her own

initiative but not one who reports the same discrimination in the same words when her boss

asks a question.").

132.    Retaliation need not be job-related to be actionable under Title VII—an employer can

effectively retaliate against an employee by taking actions not directly related to her

employment or by causing her harm outside the workplace. White, 548 U.S. at 61-62 (rejecting

authority from the Third Circuit and others requiring that the plaintiff suffer an adverse

employment action in order to recover for retaliation).

133.    "[A] plaintiff need not prove the merits of the underlying discrimination complaint, but only that 'he was acting under a good faith, reasonable belief that a violation existed.'" <u>Aman v. Cort Furniture Rental Corp.</u>, 85 F.3d 1074, 1085 (3d Cir. 1996); <u>Griffiths v. CIGNA Corp.</u>, 988 F.2d 457, 468 (3d Cir. 1993); and <u>Sumner v. United States Postal Service</u>, 899 F.2d 203, 209 (2d Cir. 1990), overruled on other grounds <u>by</u> <u>Miller v. CIGNA Corp.</u>, 47 F.3d 586 (3d Cir.1995).

134.    An employee need not be a member of a protected class to be subject to actionable retaliation under Title VII. <u>See</u> <u>Moore</u>, 461 F.3d at 342 ("Title VII's whistleblower protection is not limited to those who blow the whistle on their own mistreatment or on the mistreatment of their own race, sex, or other protected class."

135.    Title VII not only bars retaliation against the employee who engaged in the protected activity; it also bars retaliation against another employee if the circumstances are such that the retaliation against that employee might well dissuade a reasonable worker from engaging in protected activity. <u>See</u> <u>Thompson v. North American Stainless, LP</u>, 131 S. Ct. 863, 868 (2011).

136.    Here, Defendant Mastery, and its' supervisory employees, retaliated against Plaintiff because of her protected activity under Title VII.

137.    Plaintiff acted under a reasonable, good faith belief that her right to be free from discrimination on the basis of sex/gender was violated.

138.    Plaintiff was subjected to materially adverse actions at the time or after the protected conduct took place.

139.    Defendant Mastery, and its' supervisory employees, engaged in an unlawful discriminatory practice by retaliating and otherwise discriminating against Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

140.    There was a causal connection between the Defendant Mastery, and its' supervisory employees, materially adverse actions, and Plaintiff's protected activity.

141.    Defendant Mastery, and its' supervisory employees, actions were "materially adverse" because they were serious enough to discourage a reasonable worker from engaging in protected activity.

142.    Defendant Mastery, and its' supervisory employees, acted upon a continuing course of conduct.

143.    Plaintiff will rely on a broad array of evidence to demonstrate a causal link between their protected activity and the Defendant Mastery, and its' supervisory employees, actions taken against her, such as the unusually suggestive proximity in time between events, as well as Defendant Mastery's supervisory employees' antagonism and change in demeanor toward Plaintiff after Defendant Mastery, and its' supervisory employees, became aware of Plaintiff's protected activity.

144.    As a result of the Defendant Mastery's, and its' supervisory employees, violations of the Title VII, Plaintiff has suffered damages, including, but not limited to: past and future lost wages, pain and suffering, inconvenience, mental anguish, loss of enjoyment of life, humiliation, emotional distress, reputational harm, diminishment of career opportunities, and other harm, both tangible and intangible.

**COUNT IV**
**DISCRIMINATION**
**UNDER PHRA § 955**
**(against Defendant Mastery only)**

145.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above paragraphs of this complaint.

146.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

147.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA

claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend

when justice so requires"), 15(c) (Amendments "relate back" to the date of the original

pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT V**
**RETALIATION**
**UNDER PHRA § 955**
**(against all Defendants)**

148.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above

paragraphs of this complaint.

149.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

150.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA

claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend

when justice so requires"), 15(c) (Amendments "relate back" to the date of the original

pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction,

occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VI**
**DISCRIMINATION**
**UNDER PHRA – AIDING AND ABETTING**
**(against individually named Defendants only)**

151.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above

paragraphs of this complaint.

152.    Plaintiff's PHRA claims are still pending before the EEOC and PHRC.

153.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PHRA

claims against Defendants. See Federal R. Civ. P. 159a) (Courts "freely give leave to amend

when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VII**
**DISCRIMINATION**
**UNDER PFPO**
**(against Defendant Mastery only)**

154.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above paragraphs of this complaint.

155.    Plaintiff's PFPO claims are still pending before the EEOC and PCHR.

156.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PCHR claims against Defendants. <u>See</u> Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

**COUNT VIII**
**RETALIATION**
**UNDER PFPO**
**(against all Defendants)**

157.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above paragraphs of this complaint.

158.    Plaintiff's PFPO claims are still pending before the EEOC and PCHR

159.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PCHR claims against Defendants. <u>See</u> Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original

pleasing), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

### COUNT XI
### DISCRIMINATION
### <u>UNDER PFPO – AIDING AND ABETTING</u>
**(against individual Defendants only and not against corporate Defendant)**

160.    Plaintiff, Tiffany Weaver, repeats and realleges every allegation made in the above paragraphs of this complaint.

161.    Plaintiff's PFPO claims are still pending before the EEOC and PCHR.

162.    Plaintiff will seek leave to amend this complaint at the appropriate time to assert her PCHR claims against Defendants. <u>See</u> Federal R. Civ. P. 159a) (Courts "freely give leave to amend when justice so requires"), 15(c) (Amendments "relate back" to the date of the original pleading), and 15(d) (Plaintiff may "serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented").

### <u>JURY DEMAND</u>

PLAINTIFF requests a jury trial on all issues to be tried.

### <u>DEMAND TO PRESERVE EVIDENCE</u>

The Defendants are hereby demanded to preserve all physical and electronic information pertaining in any way to Plaintiff's employment, to her potential claims, her claims to damages, to any defenses to same, including, but not limited to electronic data storage, employment files, files, memos, job descriptions, text messages, e-mails, spreadsheets, images, cache memory, payroll records, paystubs, time records, timesheets, and any other information and/or data which may be relevant to any claim or defense in this litigation.

## PRAYER FOR RELIEF

**WHEREFORE**, PLAINTIFF demands judgment against Defendants, jointly and severally, in an amount to be determined at the time of trial plus interest, punitive damages, liquidated damages, statutory damaged, attorney's fees, costs, and disbursement of action; and for such other relief as the Court deems just and proper.

**DEREK SMITH LAW GROUP, PLLC**

/s/ Tova L. Rabin_____
Tova L. Rabin, Esq.
1835 Market Street
Suite 2950
Philadelphia, PA 19103
tova@dereksmithlaw.com
267-332-1692

December 8, 2022